IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-01273-WYD-BNB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

ALBERTSON'S LLC, f/k/a Albertson's, Inc.,

Defendant.
_____

**ORDER**
_____

This matter is before me on four motions to intervene:

(1)     **Motion to Intervene as Party Plaintiff** file by James Baxter [Doc. # 116, filed 5/15/2007] ("Motion to Intervene: Baxter");

(2)     **Motion for Leave to Intervene as Parties Plaintiffs By Applicants Christopher Adams and James Steadham** [Doc. # 126, filed 6/27/2007] ("Motion to Intervene: Adams and Steadham");

(3)     **Motion for Leave to Intervene as Party Plaintiff By Applicant Luis Solis Gonzalez** [Doc. # 166, filed 8/31/2007] ("Motion to Intervene: Solis"); and

(4)     **Motion for Leave to Intervene as Party Plaintiff By Applicant Nate Valentine** [Doc. # 189, filed 9/17/2007] ("Motion to Intervene: Valentine").

The motions are GRANTED IN PART and DENIED IN PART as specified.

I.

This is an enforcement action brought by the Equal Employment Opportunity Commission (the "EEOC") on behalf of all black and Hispanic employees subjected to racial and ethnic harassment by Albertson's LLC at its Distribution Center in Aurora, Colorado. The complaining party is Matthew Ricks. The EEOC's complaint alleges that Mr. Ricks exhausted his administrative remedies through the EEOC by filing "two charges of discrimination with the EEOC on behalf of himself and other similarly situated employees. . . ." Complaint [Doc. # 1] at ¶6. The EEOC's complaint alleges a hostile work environment and harassment by Albertson's based on race and national origin, id. at First Claim, and disparate treatment with respect to the terms and conditions of employment based on race, color, and/or national origin. Id. at Second Claim. The time frame of the alleged discrimination is from 1995 to the present. Id. at ¶8.

The discrimination is based on allegations that employees at the Distribution Center were subjected to graffiti in the form of swastikas and racial slurs, "including the use of the racial slurs 'n-word' and 'spic,' including references to 'bastard babies' and including drawings of Black and Hispanic individuals with ropes around their necks," id. at ¶8(a); statements to black employees "calling them 'n-words' or 'lazy n-words," id. at ¶8(c); and "writing of racial and national origin based slurs on the wall of the candy room with such phrases as 'the only good spic is a dead spic.'" Id. at ¶8(d). In addition, it is alleged that Albertson's failed to prevent or correct the harassment and failed to meaningfully respond to complaints about the harassment. Id. at ¶14.

## II.

James Baxter is a 54 year old black man who has been employed at the Distribution Center since 1989. He seeks to intervene and to assert claims for race discrimination, age discrimination, and retaliation. Baxter's race discrimination claim is based on claims of graffiti in the form of swastikas, use of the words "Kunta" and "lazy n-word," racial insults, and unwarranted discipline and less favorable work assignments because of his race. Baxter has not exhausted his EEOC administrative remedies.

Christopher Adams is black and has worked at the Distribution Center beginning in 2001 until his termination in 2007. Adams seeks to intervene and to assert a hostile work environment claim because he was exposed to racially offensive material at the Distribution Center on a daily basis, including the following: "(a) 'nigger'; (b) swastikas; (c) 'nigger cottonpicker'; (d) 'kill niggers'; (e) 'die nigger die'; (f) 'KKK'; (g) 'white power'; (h) 'a good nigger is a dead nigger'; (h) drawing of a gun with bullets hitting a black man; and (i) drawing of a black man with a noose around his neck." Adams also seeks to assert a claim that he was subjected to discriminatory terms and conditions of employment because he was denied favorable jobs, denied assistance, assigned more difficult duties, unfairly disciplined, and denied training based on his race. Adams also seeks to assert a claim that he was subjected to a discriminatory discharge based on his race. Adams has not exhausted his EEOC administrative remedies.

James Steadham is black and has worked at the Distribution Center since the early 1980's. He seeks to intervene and to assert a hostile work environment claim identical to that asserted by Adams. Steadham has not exhausted his EEOC administrative remedies.

Luis Solis Gonzalez was born in Mexico and is of Mexican-Hispanic national origin. He worked at the Distribution Center from 2002 until August 2007. Solis seeks to intervene and to assert a hostile work environment claim based on offensive ethnic slurs and comments to which he was exposed at the Distribution Center, including:

> "[N]igger," "fucking nigger," "cholos," "Mexicans should go back to Mexico," "dumb Mexicans," "lazy Mexicans," and "go back to Mexico" and "go back to Mexico you fucking Mexicans." He also heard comments to the effect that the workers should speak English because this is the U.S. and not Mexico. . . . Solis has heard managers and supervisors say "andele, andele" ("hurry up") over the loudspeaker, and does not recall ever hearing any similar call to hurry up made in English.

Solis also seeks to assert a claim that he was subjected to discriminatory terms and conditions of employment because he was required to do additional work, denied assistance, subjected to a less desirable schedule, denied time off, and publicly humiliated by a superior based on his race. Solis has not exhausted his EEOC administrative remedies.

Nate Valentine is black. He worked at the Distribution Center from 2000 until February 2003. Valentine seeks to intervene to assert a hostile work environment claim based on racist graffiti and writings to which he was exposed at the Distribution Center, including:

> "[N]igger," "hang the nigger," "boy," "go back to Africa," "a good nigger is a dead nigger," "coons," a drawing of a gun with bullets hitting a black man, swastikas, KKK, "white power," drawing of a black man with big lips in a noose, "nigger cottonpicker," "kill niggers," drawing of Hitler, "fucking spic," "fucking wetback," "cholos," "wetbacks go back to Mexico," "lazy Mexicans or Hispanics," "go back to Mexico," "Mexicans are taking over," "Mexicans will work for anything," "Mexicans will work for free," and "andele, andele."

4

> Valentine himself has been referred to as the "token nigger," and on one occasion, the racist writings were directed at him personally, stating "Nate is a nigger," or words to that effect.

Valentine also seeks to assert a claim of discriminatory terms and conditions of employment because he observed that work assignments and work schedules at the Distribution Center were made based on race; minorities were harassed by management and unfairly disciplined based on race; he was treated in a disrespectful way by his superiors based on his race; and he received a lower rate of pay based on his race. Valentine has not exhausted his EEOC administrative remedies.

## III.

Albertson's opposes intervention on a number of grounds.

A. Failure to Exhaust Administrative Remedies

Albertson's first argues that intervention should be denied because none of the proposed intervenors has exhausted his administratI've remedies before the EEOC and received a right to sue letter. The argument is meritless.

In <u>Thiessen v. General Electric Capital Corp.</u>, 267 F.3d 1095, 1110 (10th Cir. 2001), the Tenth Circuit Court of Appeals held:

> Federal courts universally hold that an individual who has not filed an administrative charge can opt-in to a suit filed by any similarly situated plaintiff under certain conditions. This so-called "single filing rule" generally allows a plaintiff, who did not file an EEOC charge, to piggyback on the EEOC complaint filed by another person who is similarly situated. The policy behind the single filing rule is that it would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. As long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirement are satisfied and no injustice

> or contravention of congressional intent occurs by allowing piggybacking.

(Internal quotations and citations omitted.) Accord Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1196-97 (10th Cir. 2004)(same).

The single filing rule was applied in this district in Rubidoux v. Johnston, 954 F. Supp. 1477 (D. Colo. 1997), where the court stated:

> An untimely plaintiff may join a suit initiated by a plaintiff who has timely filed, if their claims arise out of similar discriminatory treatment in the same time frame. This rule is based on the notion that the policies served by compliance with Title VII's filing requirements--giving notice to the employer and encouraging conciliation--are not violated if the complaints are sufficiently similar.

Id. at 1481 (internal quotations and citations omitted).

Similarly, in Snell v. Suffolk County, 782 F.2d 1094 (2d Cir. 1986), the Second Circuit adopted the "single filing rule," noting that:

> [W]here one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims arise out of similar discriminatory treatment in the same time frame. The rule thereby avoids unnecessary repetition of EEOC filings where the initial complaint went unaddressed. This presupposes, of course, that the subsequent claims are sufficiently similar to the original complaint and the employer received adequate notice and an opportunity for conciliation.

Id. at 1100 (internal quotation and citation omitted).

Albertson's reliance on Schaulis v. CTB/McGraw-Hill, Inc., 496 F. Supp. 666 (N.D. Cal. 1980), does not compel a different result. The district court in Schaulis recognized the single filing rule but refused to apply it because the court had already granted summary judgment against Ms. Schaulis, the only plaintiff who had exhausted. The Schaulis court explained:

6

> In Oatis [v.Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968)], the court held that "it is not necessary that members of the class bring a charge with the EEOC as a prerequisite to joining as co-plaintiffs in the litigation. It is sufficient that they are in a class and assert the same or some of the issues." 398 F.2d at 499. The court did hold, however, that one of the named plaintiffs must have filed an EEOC charge and received a right-to-sue letter. . . .
>
> In this case, only plaintiff Schaulis filed a charge with the EEOC. Only plaintiff Schaulis has met the jurisdictional prerequisites to filing suit. The Court concurs with the cited cases to the extent that class members are not required to file EEOC claims before they become entitled to share in any class-wide relief. However, each of these cases presumes that the named plaintiff who has met the jurisdictional prerequisites has a claim that remains viable when the non-filing class members seek to intervene in the suit. This Court is unaware of any case which has permitted intervention when summary judgment has been awarded against the only plaintiff who was entitled to file suit in the first instance.

Id. at 676 (internal citation omitted). This case is not a class action, of course, but an EEOC enforcement action. The single filing rule applies in EEOC enforcement actions. See, e.g., EEOC v. Stacey, 2006 WL 839444 (S. D. Ill. March 29, 2006); EEOC v. Akiko, 2005 WL 2649324 (E.D. Pa. Oct. 14, 2005). Importantly, Ricks exhausted his administrative remedies with the EEOC, and his claims have not been dismissed. Consequently, the narrow exception to the single filing rule applied in the Schaulis case to deny intervention is not applicable here.

I apply the single filing rule and find that the proposed intervenors' failures to exhaust their administrative remedies through the EEOC and to obtain right to sue letters, alone, do not preclude their intervention.

B. The Proposed Intervenors' Charges Do Not Allege "Similar Discriminatory Treatment"

Albertson's argues next that intervention should be denied because the claims sought to be asserted by the intervening plaintiffs do not "arise out of similar discriminatory treatment in the same time frame." Rubidoux, 954 F. Supp. at 1481. The requirement that unexhausted intervening claims arise from similar discriminatory treatment was explained in Tolliver v. Xerox Corp., 918 F.2d 1052, 1058 (2d Cir. 1990), as follows:

> [W]e agree that mere similarity of the grievances within the same general time frame suffices to permit the "single filing rule." As former Judge Bell asked in the context of claims by employees at a single plant, "If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful." Oatis v. Crown Zellerbach, 398 F2.d at 498. However, where the grievances are alleged to arise throughout a large group, the lack of conciliation of one individual grievance does not necessarily mean that conciliation efforts would be unavailing if the EEOC and the employer were alerted to the broad scope of the claim.
> \* \* \*
> In assessing the adequacy of a charge for purposes of the single filing rule, the question is whether it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges.

(Internal quotations and citations omitted.)

The claims exhausted by Ricks alleged a hostile work environment and disparate treatment based on race and national origin. Broadly speaking, the factual underpinnings were graffiti and derogatory statements in the workplace, including particularly use of the words "nigger" and "spic" and drawings of blacks and Hispanics with ropes around their necks; and a failure by Albertson's to meaningfully respond to complaints about the harassment and disparate treatment. See p.2 supra.

1. James Baxter

I agree with Albertson's that Baxter's claims for age discrimination and retaliation do not arise out of similar discriminatory treatment as was asserted by Mr. Ricks and which has been exhausted. Application of the single filing rule to allow intervention by Mr. Baxter to assert those unrelated claims is inappropriate. Rubidoux, 954 F. Supp. at 1481; Tolliver, 918 F.2d at 1058. Baxter has agreed in his reply to limit his claim to race discrimination and to withdraw his claims for age discrimination and retaliation. Reply to Defendant Albertson's LLC's Opposition, In Part, To Baxter's Motion to Intervene as Party Plaintiff [Doc. # 122, filed 6/14/2007] ("Baxter's Reply") at p.2. Baxter's race claim does arise out of discriminatory treatment similar to that alleged and exhausted by Ricks, and the single filing rule allows intervention by Baxter to assert that claim.

2. Christopher Adams and James Steadham

The hostile work environment and discriminatory terms and conditions claims asserted by Adams and Steadham are more detailed, but they certainly arise out of similar discriminatory treatment in the same time frame as those alleged and exhausted by Ricks. Application of the single filing rule to those claims is appropriate. See, e.g., Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 335 (4th Cir. 1983) (applying the single filing rule and finding that it would be futile to require exhaustion of claims for discrimination in promotions where claims of discrimination in terminations, hiring, personnel procedures, supervisory procedures, and demotions had been exhausted).

Adams and Steadham also may intervene to assert their closely related claims under 42 U.S.C. § 1981. Exhaustion of EEOC remedies is not a prerequisite to bringing suit under § 1981.

9

Lilly, 720 F.2d at 334. In addition, the analytical framework applied in Title VII and § 1981 cases is identical. Durham v. Xerox Corp., 18 F.3d 836, 839 (10th Cir. 1994); EEOC v. Von Maur, Inc., 237 F.R.D. 195, 198 (S.D. Iowa 2006). Consequently, intervention is appropriate with respect to Adams and Steadham's Claims One, Two, Three, and Four.

I agree with Albertson's, however, that Adams' claims for wrongful discharge under Title VII and § 1981 do not arise out of similar discriminatory treatment. To the contrary, these are highly individualized claims based on a specific incident of an alleged non-physical altercation between Adams and another employee. See Complaint and Jury Demand of Intervenors Christopher Adams and James Steadham [Doc. # 126-2] at ¶¶25-30. With respect to this incident, I cannot say that no conciliatory purpose would have been served through the EEOC process. Tolliver, 918 F.2d at 1058. Consequently, application of the single filing rule to allow Adams to assert his unrelated discharge claims is not appropriate. Intervention will not be allowed for Adams' Claims Five and Six.

3. Luis Solis Gonzalez

Like Adams and Steadham, Solis' hostile work environment and discriminatory terms and conditions claims are more detailed, but they certainly arise out of similar discriminatory treatment in the same time frame as those alleged and exhausted by Ricks. Application of the single filing rule allows Solis to assert his claims.

4. Nate Valentine

Like Adams, Steadham, and Solis, Valentine's hostile work environment and discriminatory terms and conditions claims are more detailed, but they certainly arise out of

similar discriminatory treatment in the same time frame as those alleged and exhausted by Ricks. Application of the single filing rule allows Valentine to assert his claims.

C.  Intervention Would Result In Delay and Prejudice

Albertson's also argues that intervention should be denied because it would result in delay and prejudice. In this regard, Albertson's relies on the rule announced in <u>Michigan Ass'n for Retarded Citizens v. Smith</u>, 657 F.2d 102 (6th Cir. 1981), to argue that the intervenors' attempts to join the suit are untimely:

> An application for . . . intervention . . . must be timely. If untimely, intervention must be denied. Timeliness is a matter within the sound discretion of the district court. . . .
>
> Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. Among the other circumstances to be considered are these: (1) the purpose for which intervention is sought; (2) the length of time preceding the application for intervention during which the proposed intervenor knew or reasonably should have known of his interest in the case; (3) the prejudice to the original parties due to the proposed intervenor's failure after he knew of reasonably should have known of his interest in the case promptly to apply for intervention; and (4) the existence of unusual circumstances militating against or in favor of intervention.

<u>Id</u>. at 105 (internal quotations and citations omitted).

This suit was commenced on June 30, 2006, and the operative First Amended Complaint [Doc. # 2] was filed on July 6, 2006. The original case schedule was extended several times, and the deadlines now in place include the following:

| | |
|---|---|
| Expert witness disclosures | June 11, 2007 |
| Rebuttal expert witness disclosures | July 10, 2007 |
| Discovery cut-off | September 10, 2007 |
| Dispositive motion deadline | October 10, 2007 |
| Final pretrial conference | December 10, 2007. |

No trial date has been set.

Baxter moved to intervene on May 15, 2007; Adams and Steadham moved on June 27, 2007; Solis moved on August 31, 2007; and Valentine moved on September 17, 2007.

I find that the motions to intervene are timely, and I will adjust the schedule if necessary to allow any limited additional discovery which may be required as a result of the intervention. However, I have already found that all of the claims which will be allowed to be asserted in intervention arise out of similar discriminatory treatment in the same time frame. Albertson's has been on notice from the beginning that this case is not limited to any individual claims but is brought on behalf of "a class of employees at the Distribution Center in Aurora, Colorado. . . ." First Amended Complaint [Doc. # 2] at p.1.

Rather than adding to the necessary discovery, it appears to me that the greater specificity of discrimination alleged in the complaints in intervention should have focused the necessary discovery. It is apparent to me that in conducting discovery about the EEOC's claim Albertson's would have discovered most of the information surrounding the closely related claims of the intervenors. There is no prejudice to Albertson's as a result of the allowed intervention.

D.  Valentine's Claims Are Time Barred

Finally, Albertson's argues that some of Valentine's claims are time barred. It is not possible based on the record now before me to determine the merit of Albertson's statute of limitation defense. That is a matter to be decided at another stage of the case. See EEOC v. J.D. Street & Co., Inc., 2006 WL 839444 *3 (S.D. Ill. March 29, 2006).

IV.

IT IS ORDERED that the Motion to Intervene: Baxter is GRANTED IN PART and DENIED IN PART as follows:

GRANTED to allow James Baxter to intervene and to assert the First Cause of Action: Title VII Race Discrimination contained in the Complaint In Intervention and Jury Demand [Doc. # 116-2]; and

DENIED in all other respects.

The Clerk of the Court is directed to accept for filing the Complaint In Intervention and Jury Demand [Doc. # 116-2] to the extent permitted above.

IT IS FURTHER ORDERED that the Motion to Intervene: Adams and Steadham is GRANTED IN PART and DENIED IN PART as follows:

GRANTED to allow Christopher Adams and James Steadham to intervene and to assert the First, Second, Third, and Fourth Claims for Relief contained in the Complaint and Jury Demand of Intervenors Christopher Adams and James Steadham [Doc. # 126-2]; and

DENIED in all other respects.

The Clerk of the Court is directed to accept for filing the Complaint and Jury Demand of Intervenors Christopher Adams and James Steadham [Doc. # 126-2] to the extent permitted

above.

IT IS FURTHER ORDERED that the Motion to Intervene: Solis is GRANTED. The Clerk of the Court is directed to accept for filing the Complaint and Jury Demand of Intervenor Luis Solis Gonzalez [Doc. # 166-2].

IT IS FURTHER ORDERED that the Motion to Intervene: Valentine is GRANTED. The Clerk of the Court is directed to accept for filing the Complaint and Jury Demand of Intervenor Nate Valentine [Doc. # 189-2].

Dated December 3, 2007.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge