IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-01273-CMA-BNB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

CHRISTOPHER ADAMS,
JAMES BAXTER,
LUIS SOLIS-GONZALEZ,
JAMES STEADHAM, and
NATE VALENTINE,

Intervenors,

v.

ALBERTSON'S LLC, f/k/a Albertson's, Inc.,

Defendant.
_____

**ORDER**
_____

This matter is before me on **Albertson's LLC's Motion to Compel Shannon Breen to Respond to Questions She Refused to Answer Based on Deliberative Process Privilege** [Doc. # 545, filed 9/12/2008] (the "Motion to Compel"). Albertson's seeks to compel answers to 48 questions asked during the deposition of Shannon Breen, an EEOC investigator, together with follow-up questions reasonably related to the answers. The EEOC resists the Motion to Compel, arguing that the information sought is protected from disclosure under the deliberative process privilege. The Motion to Compel is GRANTED IN PART and DENIED IN PART, as specified.

I.

Federal law controls the privilege issue raised in this federal question case. Everitt v. Brezzel, 750 F. Supp. 1063, 1066 (D. Colo. 1990); North Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1120 (N.D. Calif. 2003). Federal common law recognizes the deliberative process privilege. North Pacifica, 274 F. Supp. 2d at 1120. Under this privilege:

> [A] government can withhold documents or prevent testimony that reflect[s] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.

Id. at 1120-21. Although the deliberative process privilege is most often invoked to protect documents from disclosure, "courts have applied the privilege to testimony as well as documents and have made no distinction in the application of the privilege with respect to the two kinds of evidence." Id. at 1121 n.1.

The scope and purpose of the deliberative process privilege was explained in Trentadue v. Integrity Committee, 501 F.3d 1215 (10th Cir. 2007):

> [T]he deliberative process privilege . . . shields documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated. Recognizing that officials will not communicate candidly among themselves if each remark is a potential item of discovery, the deliberative process privilege is primarily designed to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government. It further serves to prevent the premature disclosure of proposed policies, and avoids misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. [The privilege] is to be construed as narrowly as consistent with efficient Government operations.

> Courts have struggled to precisely delineate the scope of [the privilege], but two requirements are clear: Privileged documents must be both predecisional and deliberative. As to the first criterion, we must distinguish between predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not.
>
> The second prong, whether a document is "deliberative," has proven more difficult to cabin. . . . [The privilege] does not protect memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context. . . . [F]actual materials are generally not privileged unless they are inextricably intertwined with policy-making processes. Non-factual materials that express opinions or recommendations, on the other hand, are clearly protected. [I]n some circumstances the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted [from disclosure].
>
> \* \* \*
>
> However, information is not protected simply because disclosure would reveal some minor or obvious detail of an agency's decisionmaking process. . . . It is difficult to imagine a document that would not divulge some tidbit regarding an agency's deliberative process.

Id. at pp.1226-28 (internal citations and quotations omitted).

In the context of an EEOC investigation, the deliberative process privilege also may be invoked to protect from disclosure predecisional documents and other information which "reveal the give and take of the consultive process" concerning the EEOC's investigation and decision of whether and how to pursue an enforcement action. Continental Airlines, 395 F. Supp. 2d at 741.

The EEOC, as the party asserting the privilege, bears the burden of establishing its applicability. Initially, there are formal requirements which the EEOC must satisfy to meet this burden. Specifically, a department head must "1) make a knowing and formal claim of privilege; 2) submit a Declaration stating the precise reasons for preserving the confidentiality of the

3

investigative report; and 3) identify and describe the document." United States Equal Employment Opportunity Commission v. Continental Airlines, Inc., 395 F. Supp. 2d 738, 741 (N.D. Ill. 2005). In this case, I am concerned with oral testimony at a deposition. The third element--identifying the document claimed to be privileged--does not apply. The questions over which the deliberative process privilege has been asserted are specified in the briefs. The Declaration of EEOC Chair Naomi C. Earp [Doc. # 561-2] (the "Earp Decl.") adequately satisfies the remaining two requirements.

Beyond the formal requirements, the EEOC must show that the information elicited by the questions over which the privilege objection was made is predecisional and deliberative. The EEOC must "present more than a bare conclusion or statement that the [information is] privileged." Redland Soccer Club, Inc. v. Dept. of the Army, 55 F.3d 827, 854 (3d Cir. 1995).

Particularly relevant to the privilege as it is asserted in this case is the court's discussion in Trentadue, 501 F.3d at 1228-29, where the circuit court noted:

> [I]n National Wildlife Federation [v. U.S. Forest Service, 861 F.2d 1114 (9th Cir. 1988)], the plaintiff requested working drafts of a National Forest Plan and the environmental impact statements associated with it. 861 F.2d at 1115. The district court noted that plaintiffs could simply compare the contested draft documents prepared by the lower-level Forest Service personnel to the final documents adopted by the agency in order to "reconstruct the predecisional judgments of the administrator. Id. at 1122. . . . [T]he release of such purely factual material would have had the effect of disclosing deliberative material.
>
> Montrose Chemical Corp.[of Cal. v. Train, 491 F.2d 63 (D.C. Cir. 1974),] follows the same logic. In that case, plaintiff sought staff memos summarizing the evidence presented at an EPA hearing on the pesticide DDT. 491 F.2d at 64. The full record of that hearing, spanning some 9200 pages, was already publicly available. Id. at 70. Accordingly, "[t]he only new information which disclosure of these summaries would provide Montrose concerns the mental

4

processes of the agency." Id. at 68. . . . The court held that the disputed materials were shielded by [the deliberative process privilege] because disclosure would reveal "what advice as to importance and unimportance of facts the Administrator received, and how much of it he accepted." Id. at 70.

II.

I have applied the deliberative process privilege to the questions at issue here, and I make the following findings.

First, although in a number of instances the precise questions asked of Ms. Breen could have been answered yes or no without revealing any privileged information, the natural follow-up questions would have inquired into details that would reveal information subject to the deliberative process privilege. This category of questions includes Questions 1, 2, 4, 5, 6, 7, 8,[1] 9, 10, 11, 13, 18, 19, 20, 26, and 27.[2] Indicative of these questions are the following:

---

[1]Question 8 raises another concern. The question was:

> **Did Ms. Scaramella [Ms. Breen's supervisor at the EEOC] tell you that she had reviewed the Ricks charges before she assigned you the case?** [Breen depo. 44:9-12].

An affirmative answer could be understood to suggest that Ms. Scaramella had determined that the charge had merit, and that is why she assigned it to Ms. Breen for investigation. If that is not so, the inference would be misleading to the public. See Trentadue, 501 F.3d at 1226. The avoidance of misleading information and inferences is one purpose underlying the deliberative process privilege. Id.

[2]The numbering of the questions coincides with that assigned by the EEOC in the Declaration of EEOC Chair Naomi C. Earp, attached to their Response. [Doc. # 561-2, filed 10/2/2008.]

> 1. **Q. Well, were you interested in determining why EEOC had determined no cause on Mr. Ricks 2002 charge?** [Breen depo. 28:3-5]

The natural follow-up to this questions would have inquired of Ms. Breen's understanding of why the EEOC made its no cause determination. That information would reveal her understanding of the EEOC's predecisional deliberative processes, including the relative importance of some facts over others, which is privileged under <u>Trentadue</u>, 501 F.3d at 1229, and it would reveal the give and take of the consultive process concerning the EEOC's investigation and decision of whether and how to pursue an enforcement action, which is privileged under <u>Continental Airlines</u>, 395 F. Supp. 2d at 741; and

> 4. **Q. Did you make any recommendation to Ms. Scaramella regarding your conclusions of your investigation?** [Breen depo. 42:3-5].

The Earp Declaration [Doc. # 561-2] establishes, at page 4 of 10, that Ms. Scaramello is Ms. Breen's supervisor. The natural follow-up to this question would have inquired into the specifics of any such recommendation among the EEOC staff. That information would reveal the give and take of the consultive process concerning the EEOC's investigation and decision of whether and how to pursue an enforcement action, which is privileged under <u>Continental Airlines</u>, 395 F. Supp. 2d at 741.

Second, nearly all of the questions seek information that is subject to the deliberative process privilege because the questions or the natural follow-up questions seek information that would reveal Ms. Breen's understanding of the EEOC's predecisional deliberative processes, including the relative importance members of the EEOC staff put on some facts over others, which is privileged under <u>Trentadue</u>, 501 F.3d at 1229. Falling within this category are

6

Questions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 46, 47, and 48.  Indicative of these questions are the following:

> 3. **Q.  What did you and Ms. Scaramella discuss with respect to your investigation of the Ricks charges?** [Breen depo. 41:19-21];
>
> 19. **Q.  Did you make any assessment of the credibility of any--anyone whose statement Mr. Ricks gave you?** [Breen depo. 73:21-23];
>
> 27. **Q.  Is there some reason why you interviewed Mr. Cortes in person as opposed to over the phone?** [Breen depo. 96:11-14]; and
>
> 33. **Q.  How many minority employees did you find who were disciplined more harshly than white employees for the same or similar offense?** [Breen depo. 134:23-135:1].

Third, many of the questions seek information that is subject to the deliberative process privilege because they or their natural follow-up seek information that would reveal the give and take of the consultive process within the EEOC during its investigation and concerning its decision of whether and how to pursue an enforcement action, which is privileged under <u>Continental Airlines</u>, 395 F. Supp. 2d at 741.  Falling within this category are Questions 1, 3, 4, 5, 6, 7 ,8, 9, 10, 11, 12, 13, and 46.  Indicative of these questions are the following:

> 5. **Q.  Did you have any discussions with Ms. Scaramella about what had been found in any previous charge filed by Mr. Ricks?** [Breen depo. 42:10-13]; and

7

11. **Q. Did you ever discuss with Ms. Lopez [3] whether or not Mr. Ricks had submitted any evidence of discrimination as of December 29, 2004, in support of his two charges of discrimination which you were investigating?** [Breen depo. 60:16-21].

Eight questions seek purely factual information which is not inextricably intertwined with the decision making process and will not improperly expose the deliberative process of the EEOC. They are:

38. **Q. Did you determine that there was a job at the Distribution Center called order selector?** [Breen depo. 138:18-21];

39. **Q. Did you determine, for example, what Mr. Ricks did?** [Breen depo. 139:8-9];

40. **Q. When you advised Ms. Wood that minority employees were disciplined more harshly than white employees for the same or similar offenses, what did you base your statement on?** (Breen depo. 143:4-8];

41. **Q. When you advised Ms. Wood that minority employees were given less favorable work assignments, what did you base that assignment on?** [Breen depo. 143:13-16];

42. **Q. When you advised Ms. Wood that several witnesses had described the workplace where for years offensive racial and ethnic graffiti was allowed to remain in the workplace for a lone period of time, what did you rely upon in making that statement to Ms. Wood?** [Breen depo. 143:21-144:2];

---

[3]The Earp Declaration [Doc. # 561-2] establishes, at page 5 of 10, that Ms. Lopez is an EEOC investigator in the Denver field office.

43. **Q. During your investigation, did you find that selection orders varied from order to order and day to day as to the type and amount of merchandise selected?** [Breen depo. 144:7-11];

44. **Q. During your investigation did you find that the union collective bargaining agreement required selection orders to be assigned on a random basis?** [Breen depo. 144:16-20]; and

45. **Q. Did you ever make any determination as to how far back Albertson's maintained a nondiscrimination policy?** [Breen depo. 146:19-21].

I suspect that there is no dispute as to the answers to Questions 38, 39, 43, 44, and 45, and they appear to me to have little or no relevance to the material issues in dispute in this case. Consequently, obtaining the EEOC's answers to these five questions does not warrant reopening the Breen deposition. To the extent that there is any importance to the EEOC's answers, however, and out of an abundance of caution, I will require that Ms. Breen answer these five questions, in writing and under oath, within 11 days of the date of this order.

Questions 40, 41, and 42 ask for the factual bases of certain statements made by Ms. Breen in meetings with Albertson's representatives. Obtaining the answers to these questions similarly does not warrant reopening the Breen deposition. Instead, Ms. Breen must also answer these three questions, in writing and under oath, within 11 days of the date of this order.

III.

The deliberative process privilege is not an absolute privilege. Redland Soccer Club, 55 F.3d at 854. Instead:

> After the government makes a sufficient showing of entitlement to the privilege, the district court should balance the competing interests of the parties. The party seeking discovery bears the

9

> burden of showing that its need for the documents outweighs the government's interest. . . . [T]he party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case or be making a *prima facie* showing of misconduct. . . . [A] district court, in balancing the interests, should consider at least the following factors: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Id.

Albertson's principal argument supporting its claim of need for the privileged information is the bald and legally unsupported assertion that it "is entitled to discover what information EEOC obtained during its pattern and practice investigation *prior* to filing of this lawsuit as opposed to what purported evidence it *now* puts forth *after* the filing of the lawsuit." Motion to Compel at p.7. I disagree. The argument, if accepted, would eviscerate the deliberative process privilege. A defendant always wants the benefit of the EEOC's analysis of the strengths and weaknesses of its case, but that alone is insufficient to overcome the important interests of the privilege, properly asserted.

In this case, Albertson's has been allowed to conduct its own thorough investigation and to undertake exhaustive factual discovery concerning what went on at the distribution center. Among other things, I allowed Albertson's to take a Rule 30(b)(6) deposition of the EEOC which included 20 categories of information. Order [Doc. # 111, filed 5/1/2008]. In June 2008, I required the EEOC to provide a witness list of "all will call and may call witnesses who ultimately will be listed by the EEOC on the final pretrial order"; I required that the witness list "shall control who the EEOC may call as witnesses at trial"; I prohibited the EEOC from

10

modifying the witness list except on my order to prevent manifest injustice; and I allowed Albertson's to depose the witnesses listed by the EEOC. Order [Doc. # 450, entered 6/10/2008] at p.2. I also ordered the EEOC to turn over 22 boxes of documents relating to an EEOC Commissioner's Charge against Albertson's which ran for nine years, from 1991 to 2000. Order [Doc. # 337, filed 1/14/2008]; Defendant Albertson's LLC's Second Motion for an Order Compelling the EEOC to Produce Documents [Doc. # 308, filed 12/18/2007] at p.2 n.2.

Applying the factors specified in Redland Soccer Club, I find that (i) relevance alone is an insufficient reason for breaching the deliberative process privilege. Continental Airlines, 395 F. Supp. 2d at 742. More to the point here, (ii) all of the evidence necessary to defend this case is available elsewhere. Albertson's has had ample opportunity to discover the facts underlying the EEOC's claims, and it does not need the details of the EEOC's pre-suit investigation to understand or defend those claims. Here, as in the Continental Airlines case, 395 F. Supp. 2d at 742 n.2, Albertson's "has not demonstrated why it is unable to conduct the same investigation undertaken by the EEOC." Although (iii) this litigation and the issues involved are serious and (iv) the role of the government in the litigation is extensive, (v) overruling the privilege carries with it a serious possibility of future timidity by government employees who would be forced to recognize that their secrets are violable. On balance, the scale tips decidedly against requiring EEOC disclosure of the privileged information.

IV.

Finally, Albertson's argues that the EEOC has waived the privilege because Ms. Breen is listed as a witness and submitted a declaration in opposition to Albertson's motion for summary judgment.

Ms. Breen is listed on the proposed final pretrial order as a witness who may be called to testify "about the EEOC's efforts to conciliate the Ricks charges." Proposed Final Pre-Trial Order [Doc. # 579-3, filed 11/5/2008] at p.6, ¶36. In addition, in the declaration submitted in opposition to Albertson's motion for summary judgment [Doc. # 468-66, filed 6/127/2008], Ms. Breen described conversations she had with Mary Ann Wood, an attorney representing Albertson's, in connection with the conciliation process. The declaration states, in relevant part:

> During the course of the investigation, I had numerous conversations with Mary Ann Wood, counsel for Albertson when I informed her generally of allegations from various witnesses who had been interviewed, in or to afford Albertson's an opportunity to respond. In particular, I advised Ms. Wood that several witnesses had described a workplace where for years, offensive racial and ethnic graffiti was allowed to remain in the workplace for long periods of time, and minority employees were given less favorable work assignments, passed over for promotion in favor of less qualified white candidates, and disciplined more harshly than white employees for the same or similar offenses.

Declaration of EEOC Investigator, Shannon Breen [Doc. # 468-66, filed 6/27/2008] at ¶2.

I already have required Ms. Breen to answer Questions 40, 41, and 42, which seek the factual bases for certain statements made by Ms. Breen in meetings with Albertson's representatives. Two other questions exist concerning discussions between Ms. Breen and Ms. Wood. They are:

> 37. **Q. Is there any reason why you would give May Anne [Wood] more information during the conciliation process rather than you would give her while you were investigating the matter?**
> [Breen depo. 138:9-13]; and
>
> 48. **Q. Did you determine that there were any other areas of disparate treatment at the Albertson's Distribution Center other than what you told Ms. Wood during your conversations while**

**investigating Mr. Rick's charge?** [Breen depo. 155:3-7].

Albertson's relies on the test announced in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), in support of its waiver argument. In Hearn, the court held that a party may be found to have waived an otherwise existing privilege under the following circumstances:

> [T]he party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

Id. at 581.

I find that Question 37 is irrelevant to any matter at issue in the case and not reasonably likely to lead to the discovery of admissible evidence. Consequently, the information is not discoverable regardless of whether it is privileged and regardless of whether any applicable privilege has been waived.

Ms. Breen's declaration and any testimony she may offer at trial are limited to facts concerning the conciliation efforts. They do not go to the merits of the EEOC's claims against Albertson's. The facts of what went on at the meetings between Ms. Breen and Ms. Wood, what was said at those meetings, and the nature of the participants' behavior is fair game. Albertson's remaining question does not go to those matters, however. Question 48, to which Albertson's

13

seeks to compel an answer, addresses another issue altogether--whether Ms. Breen identified any other areas of disparate treatment at the Albertson's distribution center not disclosed in her conversations with Ms. Wood. The EEOC has not put that matter into issue through either Ms. Breen's declaration or her possible testimony, and the deliberative process privilege has not been waived. See Continental Airlines, 395 F. Supp. 2d at 743 (holding that there is no wholesale waiver of the deliberative process privilege based solely on the fact that an EEOC investigator testified in a deposition).

V.

For the reasons stated:

IT IS ORDERED that the Motion to Compel is GRANTED IN PART and DENIED IN PART. The Motion to Compel is GRANTED to require Ms. Breen within 11 days of this order to answer, in writing and under oath, Questions 38, 39, 40, 41, 42, 43, 44, and 45. The Motion to Compel is DENIED in all other respects.

Dated November 12, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge